IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DANIEL KEITH CALDWELL, | ) | Case No. 12-2177763-drd7 |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| GLENDA SCHLUETER and | ) | |
| WILLIAM FAULKNER, | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary No. 13-2018-drd |
| v. | ) | |
| | ) | |
| DANIEL KEITH CALDWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before this Court is the Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §523 filed by the Plaintiffs, Glenda Schlueter and William Faulkner (collectively, the "Plaintiffs"). This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §157(b)(2)(I).

I.      FACTUAL BACKGROUND

The Plaintiffs moved to Stoutland, Missouri in 2004. Glenda Schlueter immediately started tuning into the morning show on KCLQ-FM featuring the Defendant and his son. Over

time, she became an avid listener, and had opportunities to visit the station and develop a friendship with the Defendant and his family.

In 2007, the Defendant and his son approached the Plaintiffs about investing in a limited liability company they were forming: Brass Monkey Media, L.L.C. (the "L.L.C."). Specifically, they asked the Plaintiffs to invest $125,000 ($62,500 each) in the L.L.C. for the purchase of the radio station (including equipment) and in exchange, they would each own a 2 ½ % ownership interest in the L.L.C. The Plaintiffs responded that they did not have that amount on hand. They offered to take a loan out against their home, but stated that they would not be able to make the monthly payments. The Defendant then proposed to make the mortgage payments for the Plaintiffs for five years and at the end of that period, repay in full their initial cash contribution. The Plaintiffs agreed. The L.L.C was formed, an Operating Agreement was executed, and the percentage interest of each investor was allocated (the "Membership Interests"). The Defendant controlled the affairs of the L.L.C.

Beginning in July of 2007, the L.L.C. made 24 monthly payments of $798.55 to the Plaintiffs, but made no further payments after June of 2009. The Defendant attributed his inability to pay to the significant drop in the radio station's gross revenue, a direct result of the recession. The Plaintiffs subsequently discovered that what they thought was an investment in the purchase of a radio station and its assets was in actuality a lease with an option to purchase. The facts surrounding the Defendant's disclosure of this arrangement are disputed by the parties.[1]

The Defendant filed his Chapter 7 petition on November 12, 2012. On May 5, 2013, the Plaintiffs initiated this adversary proceeding to determine the dischargeability of their debt. In

---

[1] Because the Court's conclusion does not rely on these facts, the Court need not reconcile the inconsistency in the testimony.

2

their Complaint, the Plaintiffs assert four alternative grounds for nondischargeability: 1) fraud under §523(a)(2)(A); 2) larceny under §523(a)(4); 3) embezzlement under §523(a)(4); and 4) securities violations under §523(a)(19).[2]

## II. DISCUSSION

Under §523(a)(19)(A), a discharge exception applies to a debt that is for "the violation of any of the Federal securities laws, …any of the State securities laws, or any regulation or order issued under such Federal or State securities laws…." That debt must have resulted from a judgment, settlement agreement or order "entered before, on, or after the date on which the petition was filed…." §523(a)(19)(B).[3] In this case, Missouri law applies.

The Missouri Uniform Securities Act of 2003 ("MUSA") covers virtually every aspect of the regulation of securities, including the requirements for registration: "[I]t is unlawful for a person to offer or sell a security in this state unless: (1) The security is a federal covered security; (2) The security, transaction, or offer is exempted from registration under sections 409.2-201 to 409.2-203; or (3) The security is registered under this act." R.S.Mo. §409.3-301. Therefore, the threshold question for this Court is whether the Membership Interests in the L.L.C. constitute securities that are subject to regulation under MUSA. This Court concludes that they do.

The statutory definition of the term "security" encompasses a broad array of transactions and interests. §409.1-102(28). It includes an "investment contract" which is defined as "an investment in a common enterprise with the expectation of profits to be derived primarily from the efforts of a person other than the investor…." §409.1-102(28)(D). The key inquiry is

---

[2] Because the Court finds the debt nondischargeable under §523(a)(19), the other grounds for excepting a debt from discharge need not be considered.

[3] The Court recognizes that there is a split in authority as to whether the securities law violation can be determined by the bankruptcy court or whether it must be adjudicated by a nonbankruptcy tribunal. *See In re Hill*, 495 B.R. 646 (Bankr. D.N.J. 2013). However, since the parties did not raise the issue, the Court need not address this.

whether the investors have retained a realistic ability to participate in significant managerial decisions of the enterprise or if they have relinquished in practical reality, actual control of the enterprise to others. *In re Reuter*, 427 B.R. 727, 762 (Bankr. W.D.Mo. 2010)(citations omitted).

    Here, it is apparent that the Defendant controlled the L.L.C. He admitted that in his capacity as manager, he "basically called the shots" with the assistance of his son. The evidence demonstrated that the Defendant established his own salary, approved all checks, purchased furniture and equipment, and entered into contracts on behalf of the L.L.C. In contrast, the Plaintiffs had no managerial power over the investment of their money. Their undisputed testimony showed that they did not participate in the negotiation of key agreements nor were they made aware of them. They were not involved in setting the Defendant's salary or making operational decisions, and they did not attend a shareholders meeting other than the first one. In short, they relinquished control of the L.L.C. to the Defendant. Thus, their Membership Interest qualifies as an investment contract and security under the MUSA.

    The next question is whether the Defendant offered to sell that security within the meaning of the statute. The statutory definition of "offer to sell" includes "every attempt to offer to dispose of, or solicitation of an offer to purchase a security or interest in a security for value." MUSA §409.1-102(26). The definition is flexible "to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Reuter*, 427 B.R. at 763 (citations omitted).

    In the first place, the Defendant admitted under oath that he was selling securities. That aside, there is ample evidence to show that he was indeed the person who offered to sell the Membership Interests to the Plaintiffs. The Defendant and his son made the initial call to the Plaintiffs asking if they could pay a visit, and they did. The Defendant described his intentions

to purchase the radio station and his need for investors. The Defendant asked the Plaintiffs for a specific contribution amount and made representations as to the return on their investment. And the Defendant "closed the deal." The Court concludes that he met the requirement of offering to sell the securities.

The last determination to be made by the Court is whether the security was registered, and if not, whether any exemptions applied. Again, the Defendant admitted under oath that he did not register the securities with the State. Additionally, the Members expressly acknowledged in the minutes of their first meeting that their interests in the L.L.C. had not been registered.

With respect to exemptions, the burden of proving that an exemption applies is upon the person claiming it. *Moses v. Carnahan*, 186 S.W.3d 889, 904 (Mo. Ct. App. 2006). The Defendant offered no evidence whatsoever on the exemption issue.[4] In fact, he testified that he did not register the security transaction because it was a closed limited liability company. However, the Defendant's excuse is rejected because an interest in a limited liability company is included in the statutory definition of "investment contract." *See* MUSA §409.1-102(28)(E). Accordingly, the Membership Interests were not registered as securities in violation of Missouri law.

### III.    DAMAGES

The Plaintiffs seek a judgment in the amount of $125,000 (their initial cash contribution) plus interest at 8% from May of 2007, reasonable attorney's fees, and punitive damages. They also seek an order that such judgment is nondischargeable.

The proper award of damages for a securities violation is set forth in MUSA §409.5-509(b). The purchaser of the security may seek to recover the consideration paid for the security,

---

[4] Nevertheless, none of the exemptions enumerated in MUSA §§409.2-201, 409.2-202 applies.

less the amount of any income received, 8% interest from the date of purchase, costs and reasonable attorneys' fees determined by the court.[5]

Under these facts, the Plaintiffs are entitled to damages consisting of their initial investment of $125,000 less the total of the payments they received from the Defendant during the 24 months he made them. In addition, they are entitled to 8% interest from the purchase date of May, 2007. Although the Plaintiffs have not offered any evidence on the attorneys' fees and costs they have incurred, the Court will permit them to submit an affidavit to that effect for consideration.

The MUSA does not provide for an award of punitive damages. In general, where a statute provides a specific remedy for its enforcement, that remedy is exclusive. *Gates v. Weldon,* 282 S.W.2d 522, 528-29 (Mo. 1955). Therefore, punitive damages cannot be awarded.

## IV.   CONCLUSION

Based on the evidence presented and the requirements of the Missouri Uniform Securities Act, this Court finds in favor of each of the Plaintiffs in an amount consisting of their initial investment of $62,500 each, less income received from the Defendant, plus interest at the statutory rate. Additionally, the Court will award the Plaintiffs reasonable costs and attorneys' fees upon a timely submission of evidence. The Court concludes that this Judgment will be nondischargeable pursuant to §523(a)(19).

Within 10 days of the date of this Opinion, the Plaintiffs shall submit an affidavit to support their respective attorneys' fees and costs, and an itemized calculation of the amount of each of their damages in accordance with this ruling and the applicable MUSA provision. Any response by the Defendant must be submitted within 10 days of the date of the Plaintiffs'

---

[5] It seems reasonably clear that the Plaintiffs' cause of action might have been barred by limitations, but that affirmative defense was not raised by the Defendant, and thus, was waived. *See* MUSA §409.5-509(j).

submission. The Court will take these into consideration in liquidating the judgment amount and issuing its final Order.

    Dated: October 25, 2013        /s/Dennis R. Dow
                                              HONORABLE DENNIS R. DOW
                                              UNITED STATES BANKRUPTCY JUDGE